## Commonwealth v. Hansen

*William Morgan*, District Attorney, for Commonwealth.

*Edward Petrillo*, for defendant.

WOLFE, P. J., March 22, 1972.—This is an appeal of defendant from his conviction in the magistrate's court for violation of section 1207 of the Game Law of Pennsylvania, 34 PS §1311.1207.

The criminal complaint against defendant charges:

"At about 9:30 P.M. the 26th day of November, 1971, William Eugene Hansen, Defendant above named, did there and then willfully and unlawfully resist inspection by threatening gestures with a shotgun by refusing to permit Deputy Game Protectors Leroy P. Brush and Elmer C. Slack, Jr., to inspect a deer hanging from a tree at his residence to determine if said deer had been legally taken and possessed. This in violation of Act 1207 of the Act of June 23, P.L. 1225 as amended November 27, 1970, Act. No. 258."

A hearing was held de novo and testimony given by the Commonwealth only, defendant electing to remain silent.

State Game Protector David Titus directed his deputies, Leroy Brush and Elmer Slack, Jr., to inspect a deer at defendant's residence on November 25, 1971. On this date, which was a Thursday and Thanksgiving Day, the hunting season for deer in Pennsylvania was not yet opened but would open the following Monday. Prior to this date, the season in New York State had been open and defendant was under a Pennsylvania hunting suspension.

In accordance with the instructions, the two deputies drove to defendant's residence at about 9:30 p.m. where they observed a deer hung by its neck from a tree. Upon advancing to the deer, they observed a tag on it with their flashlight; however, the tag was rolled up and the deer hung too high for Deputy Slack to remove it or inspect it. At about this time defendant's wife came onto the porch and requested what the deputies wanted, to which they replied they were State Game Protectors and desired to inspect the deer to ascertain if it were legally taken. Defendant's wife advised them the inspection was not necessary as the deer was killed in New York State. About this time, defendant came out onto the porch carrying a shotgun and according to the deputies' testimony would not permit inspection of his New York hunting license or permit inspection of the deer and, after use of vulgar language directed to Deputy Brush, both were ordered off the premises and the deputies left without an actual inspection of the tag on the deer to compare it with defendant's hunting license or without ascertaining the type of weapon used to kill the deer which, according to the State Game Protector, was important because the use of shotguns was permitted in New York

State but not in Pennsylvania. The State Game Protector also testified the deputies were instructed to compare the tag on the deer against the license, presumably the one that killed the deer.

The section of the Game Law under which the complaint was filed provides:

"Any person who by force, menace, threat, or in any manner resists inspection or arrest for violation of any of the provisions of this act, or refuses to go with an officer after an arrest has been made, or interferes with any officer of the Commonwealth in the performance of his duty under the provisions of this act, shall, upon conviction, be sentenced to pay a fine of two hundred dollars and costs of prosecution, and, in default of payment of the said fine, shall be imprisoned one day for each dollar of fine."

Defendant argues the Commonwealth has failed in its burden of proof for two reasons. First, defendant was found not guilty in an earlier jury trial covering the identical factual situation on a charge of "pointing a deadly weapon" and, therefore, a "merger" has occurred whereby the within summary conviction merged with the more serious charge. Second, the Commonwealth's evidence does not show or support that defendant resisted inspection of the deer as contemplated by the Game Law in that the deer was in plain view: defendant did not stand between the deputies and the deer to prevent the inspection; defendant has no duty to display a New York State license under the Pennsylvania Game Law; and, in any event, the deputies could have checked defendant's New York State license with the New York State authorities. Defendant concludes, notwithstanding defendant's presence with a shotgun in hand and his demeanor, the deputies were in no way restrained from making their inspection.

Concerning the first argument of merger is Commonwealth v. Taylor, 193 Pa. Superior Ct. 386, 391 (1960):

"The test of whether one criminal offense has merged in another is not whether the two criminal acts are successive steps in the same transaction, but whether one crime necessarily involves the other." And again at page 392, "When a statute defines certain distinct acts as crimes, the actor cannot justly complain if he is prosecuted and punished for all of them unless one of the crimes was a necessary part of the other."

The crime of pointing a deadly weapon certainly is distinct and separate from the crime of unlawfully resisting inspection of a game animal, and the ingredients of the former are not necessarily the ingredients of the latter. Certainly, it could be, but in this case the one does not necessarily involve the other and, in any event, the two charges were filed separately and tried on their distinctive features without any issue of resisting inspection of a game animal being placed before the jury in the trial of the charge of pointing a deadly weapon.

For these reasons, we hold no merger has been perfected on the separate charges nor could there be.

Going to the second argument and the merits of the case, we think Commonwealth v. Rhone, 174 Pa. Superior Ct. 166 (1953), controls the current case.

In Rhone, defendant refused to open the trunk of the vehicle he was operating in that it belonged to his wife who was with him and told her not to comply with the District Game Protector's request to open it for inspection during a roadblock by the Game Commission to determine if there was any legal or illegally killed game in their possession. The case turned on the meaning of the phrase of "in any manner" as provided in the statute for resisting inspection or arrest for violation

of the provisions of the Game Law. There, the court found there is no requirement that force or violence be used in order to constitute resistance within the purview of this section of the Game Law. "The words, 'by force, menace, threat' describes specific methods of resistance which are prohibited, but that such methods are not exclusive or the scope of prescribed resistance so limited is fully established by the very plain meaning of the phrase 'or in any manner' immediately following in the wording of the section."

In the instant case defendant not only appeared with a shotgun in hand and ordered the deputies from his premises but would not display his license so it could be compared with the tag on the deer.

There can be no question that, although no physical force was used, certainly intimidation and the ability to carry out the intimidation were present through the conduct of defendant. Counsel argues the deputy could have climbed the tree to inspect the number on the "rolled up tag" and in no way was prohibited from doing so. Even if the Game Protector had such a duty to do this under the present circumstances, which we hold he did not have, this would be of no avail to him unless he could compare the number with defendant's license or other occupant of the home who allegedly killed the deer. There was no evidence that defendant, in fact, was the one who shot the deer. The deputies were only told it was killed in New York State by defendant's wife. In no way could the deputies make a reasonable inspection under these circumstances nor, in our opinion, does the law call upon them to place themselves in deliberate danger under the atmosphere that prevailed here.

For the foregoing reasons, we hold the Commonwealth has carried its burden of proof beyond a reasonable doubt and make the following

## ORDER

And now, to wit, March 22, 1972, defendant is found guilty as charged and is sentenced to pay a fine of $200 together with costs of prosecution and in default of payment of the fine and costs, shall be imprisoned one day for each dollar of fine. Exceptions noted to defendant.